**Robert J. SMITH**

v.

**Officer Sylvia J. REDDY, Baltimore County, Maryland.**

No. S 95–137.

United States District Court,
D. Maryland.

April 6, 1995.

William F. Gately, Kathleen Dick Leslie, Howell, Gately, Whitney & Carter, Towson, MD, for plaintiff.

Michael A. Fry, Gregory Gaskins, Assts. County Atty., Baltimore County Office of Law, Towson, MD, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a case under 42 U.S.C. § 1983, in which Robert Smith, acquitted of serious criminal charges after a bench trial in Baltimore County, Maryland, sues Baltimore County and the police officer who procured the warrant for Smith's arrest, claiming that his Fourth Amendment right to be free of unreasonable seizure was violated by its officer's actions in procuring the warrant. The defendants have moved for summary judgment, or alternatively, to dismiss. The Court, by letter dated February 14, 1995, directed that the issue of qualified immunity be fully briefed, on summary judgment, at

this early stage of the proceedings, in accordance with the Supreme Court's directive in *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *see also, Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir.1991). The Supreme Court stressed in *Anderson* that summary judgment motions raising qualified immunity should be decided at the earliest possible stage of the proceedings. 483 U.S. at 646, 107 S.Ct. at 3042. Having received and considered the plaintiff's opposition to the pending motion, and there being no need for an oral hearing, none was held. Local Rule 105.6 (D.Md.)

■ The doctrine of qualified immunity protects government officials from civil suits arising from their discretionary functions, when their action "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court, for the purposes of this motion, accepts that a right to be free from arrest except upon probable cause is a legally established right that any reasonable police officer is charged with knowing.

■ This, however, is only part of the necessary inquiry. The Fourth Circuit has stressed that when determining whether the specific right allegedly violated was clearly established, "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). The question thus becomes whether the officer's conduct was objectively reasonable, *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); that is, whether an officer, acting under the circumstances as she perceived them, *see Gooden v. Howard County*, 954 F.2d 960, 965–66 (4th Cir.1992) (en banc), reasonably could have believed that her action did not violate the constitutional rights asserted. *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir.1988); *Pritchett*, 973 F.2d at 312.

■ In cases such as this, where a plaintiff asserts that an officer lacked probable cause to arrest because of false or misleading statements or omissions made in a warrant's supporting affidavit, courts have held that the standard set forth in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), established with respect to suppression hearings in criminal cases, also defines the scope of qualified immunity. *See, e.g., Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991); *Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir.1990). In the Fourth Circuit, the qualified immunity inquiry therefore becomes whether "(1) the [party] makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit, and (2) the [party] shows that the false information was essential to the probable cause determination." *Simmons v. Poe*, 47 F.3d 1370 (4th Cir.1995). Essentially, where an officer intentionally or recklessly misleads a magistrate in a material way, the shield of immunity is lost. *See Golino v. City of New Haven*, 950 F.2d at 871. This issue of qualified immunity is ultimately a question of law for this Court. *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir.1991).

Plaintiff argues that he has met this two-part test, thereby defeating defendant Reddy's claim of qualified immunity. Plaintiff relies, in part, on *Golino v. City of New Haven* to support this assertion. The Court agrees with *Golino* to the extent it holds that *Franks* is the departure point for analyzing cases brought under 42 U.S.C. § 1983 stemming from alleged misstatements and omissions in a warrant application. This Court believes, however, that *Golino*, along with several other cases cited by plaintiff from other circuits, does not reflect established case law in the Fourth Circuit dealing with the application of *Franks* and its two-prong test.

■ First, this Court believes that *Golino* does not reflect the well-settled law in this Circuit regarding the materiality prong of *Franks*. In the Fourth Circuit, there is no *Franks* violation, at least with regard to statements in the warrant affidavit, if probable cause is still established after excision of

any alleged misstatements. *See Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1069 (1995); *United States v. Gillenwaters*, 890 F.2d 679, 681–82 (4th Cir. 1989). Unlike the Second Circuit, *see Velardi v. Walsh*, 40 F.3d 569, 574 n. 1 (1994), this Court does not believe that the materiality prong of the *Franks* test is a question of fact for the jury in the Section 1983 context. In a *Franks* civil case, the question of materiality of any omissions or misstatements is a subpart of the qualified immunity inquiry, which is, by its very nature, a threshold one under *Anderson*.

Materiality, in this context, is ultimately a question of law as well. Such an approach is consistent with the treatment of the materiality question in the criminal context. Both the Supreme Court and the Fourth Circuit have held that the issue of materiality under such statutes as 18 U.S.C. § 1001 is a question of law for the court, not a question of fact for the jury. *See Kungys v. United States*, 485 U.S. 759, 772, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988) (adopting Sixth Circuit reasoning that because the ultimate finding of materiality turns on an interpretation of substantive law, it is proper to treat the issue of materiality as a legal question for the courts); *United States v. Norris*, 749 F.2d 1116, 1122 (4th Cir.1984) ("materiality is a question of law to be determined by the trial judge"), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 496 (1985). This Court cannot think of any reason why the rule should be any different in the civil setting.

Indeed, the reason for treating the issue as a question of law is even more compelling here than in a criminal case, for, if the question were treated as one of fact, the lay jury, at the behest of an acquitted accused, would be applying its hindsight judgment to the question of what role the information in question played in a legally-trained magistrate's overall assessment of probable cause, which is a task that is so much a matter of training, experience, and judgment that, even in the criminal context, it is a discretionary call on the magistrate's part. *See Illinois v.*

*Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Some courts also have simply imposed too low a threshold for the claims of intent or recklessness which comprise the first prong of *Franks*. Indeed, *Golino* is internally inconsistent in that, having mouthed the *Franks* standard that the plaintiff "must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth," made a false statement or deliberate omission that was necessary to find probable cause, 950 F.2d at 870, it goes on to omit any *application* of that test. The *Golino* court held, in effect, that the court reviewing a qualified immunity summary judgment motion in such a case must accept as true a plaintiff's simple allegation of deliberateness and recklessness. 950 F.2d at 871–72. This is not only internally inconsistent, but in this Court's opinion, inconsistent with the Supreme Court's approach to early and inexpensive determination of qualified immunity issues by summary judgment, as set forth in *Anderson v. Creighton* and *Harlow v. Fitzgerald*.

*Golino*'s approach is also inconsistent with Fourth Circuit precedent, which clearly requires a higher showing than *Golino* to establish intent or recklessness. In articulating the standard, the Fourth Circuit has stated:

> *Franks* clearly requires defendants to allege more than "intentional" omission in the weak sense. "The mere fact that the affiant did not list every conceivable conclusion does taint the validity of the affidavit." *Franks* protects against omissions that are **designed to mislead,** or that are made in **reckless disregard of whether they would mislead,** the magistrate. To obtain a *Franks* hearing the defendant must show that the omission is the product of a "deliberate falsehood or of reckless disregard for the truth." "[M]ere [ ] negligen[ce] in ... recording the facts relevant to a probable cause determination" is not enough.

*Simmons v. Poe*, 47 F.3d 1370 (4th Cir.1995), quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990) (emphasis in original).

The Fourth Circuit has seriously questioned the approach employed by other circuits which allows intent or recklessness to be inferred simply from the fact that an omission, even if material, was made. *Colkley*, 899 F.2d at 301. The Court in *Colkley* stressed that this approach "collapses into a single inquiry" the two elements of *Franks*, and it held that the district court could not infer intent or recklessness from the fact of an omission alone. *Id.* Every decision to include or exclude certain information in an affidavit is "intentional" in that it is made knowingly, and the Court pointed out that if this were to be the standard, "the *Franks* intent prerequisite would be satisfied in almost every case." *Colkley*, 899 F.2d at 300. Smith must therefore meet a higher threshold in order to defeat defendant Reddy's motion and show that a reasonable officer would have known he was violating Smith's clearly established rights.

■ This prior discussion all helps answer the question of whether a reasonable officer would have known she was violating the clearly established rights of Smith, and having all this in mind, the Court now turns to what the plaintiff has proffered in support of his position that the defendant officer is not entitled to summary judgment on qualified immunity grounds. The plaintiff has identified only two "active" misstatements, as set forth on pages 34–36 of his opposition memorandum, and for purposes of this motion, this Court accepts them as true. The first relates to whether or not a Mr. Earle had earlier identified himself to a police officer and the second relates to whether or not it could be inferred that Mr. Smith had guilty knowledge.

Excising these alleged misstatements from the warrant application does absolutely nothing to diminish probable cause on the face of the warrant for Mr. Smith's arrest. Therefore, there is neither subjective liability nor, *a fortiori*, a loss of the cloak of qualified immunity on account of the inclusion of these statements, under *Wilkes* and *Gillenwaters*.

■ Turning to the alleged omissions by Officer Reddy, the Court observes additionally that Section 1983 has never been a font of general tort law governing police officers.

*See Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–61, 47 L.Ed.2d 405 (1976). Section 1983 is also not a license for a jury's hindsight assessment of the thoroughness of a police investigation, as the Fourth Circuit so clearly observed in *Torchinsky*. 942 F.2d 257, 264 (4th Cir.1991). The Court must also keep in mind that imposition of broad liability for omissions in warrant applications would paralyze law enforcement by requiring that a warrant application contain a complete, voluminous recitation of every fact known to the police which could be exculpatory, rather than a simple statement of facts establishing probable cause. The perils of such an approach were well appreciated by the Fourth Circuit in *Gooden:*

It is conceded in this case that the officers made a mistake. Ms. Gooden is not mentally ill and all concerned wish that she had not been detained in any fashion on the evening in question. The fact that a mistake was made, however, cannot be dispositive of the issue of qualified immunity in this lawsuit. The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present and those officials—like other officials who act in ways they reasonably believe to be lawful— should not be held personally liable." *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040. If every mistaken seizure were to subject police officers to personal liability under § 1983, those same officers would come to realize that the safe and cautious course was always to take no action. The purposes of immunity are not served by a police force intent on escaping liability to the cumulative detriment of those duties which communities depend upon such officers to perform.

954 F.2d at 966–67. Finally, of course, the Court must be wary of viewing police action through a 20–20 hindsight lens, as *Torchinsky* makes clear.

■ The alleged omissions are detailed in pages 37–39 of plaintiff's opposition memorandum, and the Court accepts them as true for purposes of this motion. The first al-

leged omission goes to the intoxication and background of the complaining witness, Ms. Young. Neither a police officer nor a magistrate is in a position to engage in a credibility evaluation of a complaining witness. That is an assessment made at trial, as the Fourth Circuit again made clear in *Torchinsky*. It might well be that there was some reason to doubt Ms. Young, but she was a complaining witness who could not be ignored. Given her past relationship with Mr. Smith, it was quite legitimate that, in order to get her fully and truthfully to disclose what she knew about him, she had to be made aware of the penalties of submitting a false report or obstructing justice. This is not a matter as to which the plaintiff satisfies the strong *Franks* preliminary showing.

The same is true with regard to the personal characteristics of Mr. Smith. It is not unknown for life-long residents of an area, age 60, with no prior record and even with money, to do silly—and even criminal— things after a night of drinking. Witnesses' observations about a young man thrown out of the bar who could have been the shooter likewise do not satisfy the strong preliminary showing made by *Franks* for the loss of qualified immunity. As the Fourth Circuit observed in *Torchinsky*, "a police officer's failure to pursue potential exculpatory evidence [is] not in itself sufficient to negate probable cause." 942 F.2d at 264. There might often be another plausible suspect, but the Constitution does not require police officers to spend their time chasing one-armed men or other chimerae. It is certainly within the realm of a reasonable officer's judgment to narrow down the inquiry to a plausible suspect—and the Court readily concludes as a matter of law that Smith was a plausible suspect, given all the circumstances—when seeking a warrant.

■ Indeed, the exercise of judgment is what qualified immunity is all about, if the Supreme Court precedent in the area is to be honored. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). To require theories about other possible suspects to be included in an arrest warrant application would force the issuing magistrate into the role of a factfinder, rather than a determiner of probable cause for the named suspect. This is not consonant with the Supreme Court's view of the role of the magistrate in determining probable cause, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or the role of the officer in securing the warrant under *Franks v. Delaware.* 438 U.S. 154, 98 S.Ct. 2674. Again, turning to the possible evidence from Mr. Earle, Officer Reddy—or any reasonable officer—was not obliged to write a book for the magistrate about every circumstance that might lead to questioning Mr. Earle's evidence.

Smith has failed to show how any of these alleged omissions were made intentionally or recklessly. As explained above, this Court believes no reasonable officer would conclude that failure to include the alleged omissions was violative of the *Franks* standard. Without a showing of the requisite intent, no reasonable officer could have known that his actions were done in violation of clearly established rights.

The other matters relied upon by the plaintiff that occurred after his arrest are obviously immaterial to the determination of the qualified immunity question. Even if they were material, though, they do not begin to call the question of good faith in securing the warrant sufficiently into doubt as to justify denial of the summary judgment motion.

The Court must, in the last analysis, keep in mind that, as the Fourth Circuit recently stated in *Hampton v. White,* No. 93–2632, 1995 WL 26683 (4th Cir. June 14, 1994), in cases of alleged violation of the right to be free from illegal arrests and malicious prosecutions, "the key issue is whether [the officer] could have reasonably believed he had probable cause to arrest [the plaintiff] based upon the facts known at the time," *citing Gooden v. Howard County,* 954 F.2d 960 (4th Cir.1992) (en banc). Slip op. at 4. In this case, there is indeed a genuine dispute as to whether it would have been better police work for Officer Reddy not to have decided to view Mr. Smith as the prime suspect, but rather to have made a more thorough investigation. But, the Court's role, under *Torchinsky,* is not to second-guess police work,

or to have a jury do so. If such were the case, "officers would come to realize that the safe course was always to take no action." *Gooden,* 954 F.2d at 967. Plaintiff has attempted, using his virtually unlimited resources and perfect hindsight, to show that, all along, the finger of suspicion was pointing away from him toward an ejected bar patron, one Tilton. What the plaintiff ignores is that there also was plenty of evidence from which a reasonable police officer could have concluded that it was Smith, in a fit of pique or rage, who decided to come back to the bar and fire the shots. There was evidence from the young lady involved that she and Smith had a blow-up, that Smith left in a huff, and that Smith had threatened her with bodily harm. There was also evidence that Smith kept a gun in his car. Under these circumstances, the doctrine of qualified immunity, established by the Supreme Court in *Harlow,* and given due recognition by the Fourth Circuit in cases like *Gooden, Torchinsky* and *Hampton,* demands that this case not go any further.

For the reasons stated, an Order will be entered separately, that grants summary judgment to defendant Reddy on the ground of her qualified immunity from suit under 42 U.S.C. § 1983. Furthermore, the Order will dismiss the complaint as against defendant, Baltimore County, Maryland. The allegations of the complaint are plainly insufficient to warrant the imposition of liability upon the County under well-settled Supreme Court and Fourth Circuit precedent. *See e.g., City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (no liability for single act of misconduct by non-policymaking official); *Temkin v. Frederick County Comm'r,* 945 F.2d 716 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) (no liability for inadequate training in the absence of underlying Constitutional infraction); *Morrash v. Strobel,* 842 F.2d 64 (4th Cir.1987) (no liability for negligent supervision or oversight for occurrence of a single instance under condonation theory). Finally, all pendent claims against all parties will be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

*ORDER AND JUDGMENT*

For the reasons stated in the foregoing Memorandum Opinion, it is, this 6th day of April, 1995, ORDERED and ADJUDGED:

1. That defendant Reddy's motion for summary judgment on grounds of qualified immunity BE, and it hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of defendant Reddy on all federal claims, against the plaintiff, with costs;

3. That defendant Baltimore County, Maryland's alternative motion to dismiss BE, and it hereby IS, GRANTED;

4. That all federal claims against defendant Baltimore County, Maryland, BE, and they hereby ARE, DISMISSED for failure to state a claim upon which relief can be granted;

5. That all state-law claims against all parties hereby ARE, DISMISSED, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3); and

6. That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.